RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, MEBA, AFL-CIO; DAVID
CLINKSCALE; MARGARET GRAHAM; DAVID
M. KHANOYAN,

                 *Plaintiffs-Appellants,*

    *v.*

SECRETARY OF THE DEPARTMENT OF
TRANSPORTATION; JANE GARVEY,
Administrator, Federal Aviation
Administration,

                 *Defendants-Appellees.*

No. 10-3171

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-01152—Ann Aldrich, District Judge.

Argued: July 21, 2011

Decided and Filed: August 16, 2011

Before: KENNEDY, SILER, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** William W. Osborne, Jr., OSBORNE LAW OFFICES, P.C., Washington, D.C., for Appellants. Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** William W. Osborne, Jr., OSBORNE LAW OFFICES, P.C., Washington, D.C., for Appellants. Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

―――――――――――

## OPINION

―――――――――――

SILER, Circuit Judge.    Plaintiffs, the National Air Traffic Controllers Association, AFL-CIO ("NATCA"), and three individual current or former air traffic controllers, David Clinkscale, Margaret Graham, and David Khanoyan, appeal two orders dismissing their suit against the Secretary of the Department of Transportation and the Administrator of the Federal Aviation Administration (collectively "FAA"). For the following reasons, we **AFFIRM**.

## BACKGROUND

This appeal is the culmination of nearly seventeen years of litigation arising from the FAA's privatization of air traffic control ("ATC") towers. In 1993, the FAA decided to privatize all 115 of its "Level I" ATC towers.[1] *Nat'l Air Traffic Controllers Ass'n v. Pena*, 78 F.3d 585, 1996 WL 102421, at *1 (6th Cir. 1996) (unpublished). As a result, approximately 1500 government air traffic controllers working at Level I ATC towers were forced to leave the field, be trained to operate higher level towers, or secure employment with the private contractors assuming operation of the Level I ATC towers. *Id.*

Ten years earlier, the Office of Management and Budget issued Circular A-76, which governs the privatization of a government function and "prohibits the federal government from performing an activity that could be performed for less cost by the private sector." Before privatizing a government function, an agency must determine whether that function is inherently governmental or commercial. An inherently governmental function must be performed by government employees. A commercial

―――――――――――――――

[1] Until 1998, the FAA classified all ATC towers as Level I through Level V based on the density of aircraft operations through a tower's facility. *Nat'l Air Traffic Controllers Ass'n v. LaHood*, No. 1:99cv1152, at *3 n.4 (N.D. Ohio Dec. 11, 2009). Level I towers see fewer than 35 operations per hour. *Id.* Although the FAA employs a new classification system, Plaintiffs' claims only refer to those towers privatized under the pre-1998 classification system and so those terms will be used here.

function, however, may be privatized, provided that the agency performs a cost comparison study and determines that the function may be more economically performed by the private sector.

In 1994, NATCA, Clinkscale and Graham brought suit to stop the FAA's privatization of Level I ATC towers, alleging that air traffic control is inherently governmental and that the FAA's privatization program violated Circular A-76. The district court dismissed the plaintiffs' claims for lack of prudential standing, but we reversed. *Pena*, 78 F.3d 585, at *7. On remand, the district court found that the plaintiffs had standing to challenge the FAA's privatization program under Article III. *Nat'l Air Traffic Controllers Ass'n v. Pena*, 944 F. Supp. 1337, 1342–46 (N.D. Ohio 1996). It held the FAA failed to determine whether work at Level I ATC towers is inherently governmental as required by Circular A-76, and instructed the FAA to undergo a proper Circular A-76 analysis on remand. *Nat'l Air Traffic Controllers Ass'n v. Sec'y of the Dep't of Transp.*, 997 F. Supp. 874, 883–85 (N.D. Ohio 1998).

Thereafter, the FAA continued to privatize ATC towers and so NATCA, Clinkscale and Graham, joined by Khanoyan, again brought suit to stop it. The district court again held that the FAA failed to sufficiently complete a Circular A-76 analysis, *Nat'l Air Traffic Controllers Ass'n v. Dep't of Transp.*, No. 1:99cv1152, at *6 (N.D. Ohio Apr. 7, 2000), and remanded the analysis to the FAA, but refused to terminate the private contracts already in place, *Nat'l Air Traffic Controllers Ass'n v. Sec'y, Dep't of Transp.*, No. 1:99cv1152, at *2–3 (N.D. Ohio June 26, 2000).

The FAA filed a motion for summary judgment. It argued that a 2003 amendment to 49 U.S.C. § 47124 demonstrated Congress's view that work in Level I ATC towers is not an inherently governmental function. This amendment, argued the FAA, precluded Plaintiffs from challenging its privatization of Level I ATC towers on the basis that air traffic control work is inherently governmental. The district court agreed and granted the FAA's motion in part, leaving intact Plaintiffs' claims concerning ATC towers that, although privatized while at Level I status, had since exceeded 35

operations per hour.  *Nat'l Air Traffic Controllers Ass'n v. Mineta*, No. 99cv1152, at *8 (N.D. Ohio Feb. 4, 2005).

The FAA then filed a motion to dismiss.  It argued that the individual Plaintiffs, and thus NATCA, no longer had standing to challenge the privatization of *any* ATC towers.  It noted the individual Plaintiffs would not lose their jobs if it renewed contracts at already-privatized towers and that no individual Plaintiff ever worked at any privatized ATC tower that exceeded Level I classification.  The district court agreed and granted the FAA's motion, dismissing Plaintiffs' suit entirely.  *LaHood,* at *5.  Plaintiffs now appeal the district court's orders of February 4, 2005 and December 11, 2009.

## DISCUSSION

We review de novo a district court's dismissal of a complaint pursuant to either Rule 12(b)(6) or Rule 56(c) of the Federal Rules of Civil Procedure.  *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).  We also review de novo questions of statutory interpretation, *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008), and standing, *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010).

## A.  The February 4, 2005 Order

Plaintiffs argue the district court erred by granting summary judgment in part to the FAA in its February 4, 2005 order because § 47124(b)(2) does not demonstrate Congress's view that work in Level I ATC towers is not inherently governmental.  They argue that § 47124(b)(2) does not apply to the privatized Level I ATC towers and, even if it does, it only permits the FAA to contract those towers to non-federal, governmental entities.

Our statutory-interpretation analysis begins by examining "the language of the statute itself to determine if its meaning is plain."  *Parrett*, 530 F.3d at 429 (quoting *United States v. Wagner*, 382 F.3d 598, 607 (6th Cir. 2004)).  "Plain meaning is examined by looking at the language and design of the statute as a whole."  *Id.*  In doing

so, we must "giv[e] effect to each word and mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998) (quoting *Lake Cumberland Trust, Inc. v. U.S. E.P.A.*, 954 F.2d 1218, 1222 (6th Cir. 1992)).

As part of its regulation of the nation's airports, Congress enacted § 47124(b), and amended it in 2003. *See* Pub. L. No. 108-176, Title I, § 105(2), 117 Stat. 2498 (Dec. 12, 2003). It reads:

> (1) The Secretary [of Transportation] shall continue the low activity (Visual Flight Rules) level I air traffic control tower contract program established under subsection (a) of this section for towers existing on December 30, 1987, and extend the program to other towers as practicable.
> (2) The Secretary may make a contract with *a qualified entity (as determined by the Secretary) or*, on a sole source basis, with a State or a political subdivision of a State to allow *the entity*, State, or subdivision to operate an airport traffic control tower classified as a level I (Visual Flight Rules) tower if the Secretary decides that *the entity*, State, or subdivision has the capability to comply with the requirements of this paragraph.

49 U.S.C. § 47124(b) (amendments emphasized).

### 1. *Section 47124(b)(2) applies to the privatized Level I ATC towers.*

Plaintiffs argue that Congress's use of the term "level I (Visual Flight Rules) tower" means that § 47124(b)(2) only applies to Level I ATC towers that handle exclusively Visual Flight Rules ("VFR") traffic. Because all of the privatized Level I ATC towers handle both VFR[2] and Instrument Flight Rules ("IFR")[3] traffic, Plaintiffs argue that § 47124(b)(2) is inapplicable to the FAA's Level I privatization program.

---

[2]Pilots subject to VFR are required to "see and be seen" and to base their aircraft's positioning on visual information. *See Nat'l Air Traffic Controllers Ass'n v. Dep't of Transp.*, No. 1:99cv1152, at *3 (N.D. Ohio April 7, 2000).

[3]Pilots subject to IFR operate their aircraft with the aid of instruments and are subject to greater control from ATC towers than VFR flights. *See id.*

The term "level I (Visual Flight Rules) tower," however, can be read to refer to ATC towers handling both VFR *and* IFR traffic. According to § 47124(b)(2), the FAA may privatize ATC towers that are classified as a "level I (Visual Flight Rules) tower." Because the term "VFR" appears in parentheses following the term "level I," VFR initially appears to limit the scope of the term "level I," as if to say "the FAA cannot privatize all Level I towers, but only those Level I towers handling exclusively VFR flights." VFR's use elsewhere in subsection (b), however, belies such an interpretation. Section 47124(b)(1) requires the FAA to continue the "low activity (Visual Flight Rules) level I air traffic control tower contract program." Rather than as a parenthetical modifier of the term "level I," VFR appears to clarify the language preceding it, as if to say "the FAA should continue to privatize low activity ATC towers, for example, those handling VFR flights." With this usage in subsection (b)(1) as a backdrop, the term "level I (Visual Flight Rules) tower" in subsection (b)(2) reads differently. Because the term "low activity" is absent from subsection (b)(2), the phrase "level I (Visual Flight Rules) tower" can be interpreted to mean merely a "level I (low activity) tower" handling mainly, but not exclusively, VFR traffic.

If, as Plaintiffs argue, we interpret "level I (Visual Flight Rules) tower" to mean an ATC tower handling *only* VFR flights, then §§ 47124(b)(1) and (2) become meaningless. The district court noted that Plaintiffs have argued "no air traffic control tower only accepts VFR flights; i.e., even the smallest tower . . . will control IFR flights from time to time." *Nat'l Air Traffic Controllers Ass'n v. Dep't of Transp.*, No. 1:99cv1152, at *6 n.4. As a result, under the Plaintiffs' suggested interpretation, the term "level I (Visual Flight Rules) tower" would describe an ATC tower that does not exist. To avoid rendering § 47124(b)(2) meaningless, we hold that the term "level I (Visual Flight Rules) tower" includes the ATC towers in the FAA's privatization program at issue here, whether they handle exclusively VFR traffic or not.

### 2. Section 47124(b)(2) applies to private, non-governmental entities.

Even if § 47124(b)(2) applies to the privatized Level I ATC towers, Plaintiffs nevertheless argue it did not permit the FAA to contract those towers to private, non-governmental entities. They argue that the term "qualified entity" in § 47124(b)(2) is a non-federal, yet still governmental entity.

Congress's 2003 amendments to § 47124(b)(2), however, demonstrate its intent that the FAA may contract Level I ATC towers to private, non-governmental entities. Before 2003, § 47124(b)(2) already authorized the FAA to contract Level I ATC towers to "a State or a political subdivision of a State." Separating its addition by the word "or," Congress added the term "qualified entity" as the first of an enumerated list of actors in § 47124(b)(2) with which the FAA could contract to operate Level I ATC towers. The term "qualified entity," then, must necessarily refer to something other than a state, county or local government—for example, a private commercial contractor. To hold otherwise, as Plaintiffs advocate, would render the term superfluous.

As a result, because § 47124(b)(2) applies to the Level I ATC towers at issue here and permits the FAA to contract with private, non-governmental entities for their operation, we hold that Congress effectively declared work in those towers not to be inherently governmental and affirm the district court's February 4, 2005 order.

## B. The December 11, 2009 Order

Plaintiffs argue that the district court erred by granting the FAA's motion to dismiss in its December 11, 2009 order because our earlier decision finding they had prudential standing, *see Pena*, 78 F.3d 585, and the district court's earlier decision finding they had Article III standing, *see Pena*, 944 F. Supp. 1337, established their standing as "law of the case."

"In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue." *Zurich Ins. Co., v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (quoting *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th

Cir. 1996)).  The "irreducible constitutional minimum" of standing requires a plaintiff to show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To establish standing to sue as an association, NATCA must show that (1) its members "'would otherwise have standing to sue in their own right'"; (2) "'the interests it seeks to protect are germane to [its] purpose'"; and (3) "'neither the claim asserted nor the relief requested requires the participation of the individuals in the lawsuit.'" *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 967 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

Clinkscale, Graham and Khanoyan can no longer demonstrate the "injury in fact" necessary for Article III standing.  In 1996, the district court concluded the individual Plaintiffs' injury was the "loss of their current Level I government jobs." *Pena*, 944 F. Supp. at 1343.  But because we affirm the district court's February 4, 2005 order foreclosing Plaintiffs' challenge to the privatization of Level I ATC towers, their only remaining claim is that they will be injured by the renewal of private contracts at towers exceeding Level I classification.  Graham and Khanoyan are now retired, and Clinkscale has moved to another tower.  None of these individuals stands to lose his job by virtue of the FAA's renewal of any private contracts.  Nor has any individual Plaintiff worked in the past at a privatized Level I ATC tower alleged to have exceeded Level I classification. *See LaHood*, at \*7.  Thus, Clinkscale, Graham and Khanoyan have not suffered (nor will they suffer) harm from the FAA's privatization of ATC towers exceeding Level I classification and have no standing to maintain their suit against the FAA.

Nor does NATCA retain standing to maintain its suit.  We found NATCA had prudential standing originally because its interest was "not just keeping [its members'] jobs but extend[ed] to ensuring that the FAA does not privatize inherently governmental functions."  *Pena*, 78 F.3d at *4.  Again, because we affirm the district court's February 4, 2005 order foreclosing this argument with respect to Level I ATC towers, NATCA's only remaining claim is that its membership is harmed by the continued privatization of towers exceeding Level I classification.  To retain associational standing, then, NATCA must identify a member who worked at one of the nine privatized ATC towers alleged to have exceeded Level I classification.  NATCA has identified no such member and instead relies on "law of the case" to maintain its standing.  No previous court's decision can compel that we find standing now that the members NATCA has identified no longer suffer an injury in fact.  As a result, NATCA has not established the first prong of associational standing and we affirm the district court's December 9, 2001 order.

Even if we did find that Plaintiffs have standing to challenge the FAA's renewal of private contracts for the operation of ATC towers no longer classified as Level I, § 47124(b)(3) permits such privatization.  As already discussed, the 2003 amendments to subsection (b)(2) permitted the FAA to continue its 1993 Level I privatization program.  Subsection (b)(3) instructs the FAA to privatize other ATC towers falling outside that program.  In § 47124(b)(3), Congress instructed the FAA to "establish a program to contract for air traffic control services at nonapproach control towers, as defined by the Secretary, that do not qualify for the contract tower program" in subsections (a) and (b)(1).  *See* 49 U.S.C. § 47124(b)(3)(A).  The FAA contends, and Plaintiffs do not dispute, that every ATC tower it privatized in its 1993 program is a "nonapproach control tower."  Thus, the nine privatized ATC towers alleged to have exceeded Level I classification fit squarely within § 47124(b)(3)'s mandate.  These towers can no longer be classified as Level I, and thus no longer qualify for the 1993 privatization program in § 47124(b)(2), but are nonetheless "nonapproach control towers" subject to privatization in § 47124(b)(3).  As a result, even if Plaintiffs had

standing to challenge the continued privatization of these nine ATC towers, § 47124(b)(3) precludes them from doing so.

    **AFFIRMED**.