**IN RE: K LUNDE, LLC, Debtor.**

**In re: Hildy Joe, LLC, Debtor.**

**In re: Bliss Enterprises, LLC, Debtor.**

**In re: IPS New West Station Investors, LLC, Debtor.**

**Jointly Administered Under Bankruptcy Case No. 13–17775 EEB**
**Bankruptcy Case No. 13–17776 EEB,**
**Bankruptcy Case No. 13–17777 EEB,**
**Bankruptcy Case No. 13–17778 EEB**

United States Bankruptcy Court, D. Colorado.

Signed March 24, 2014

Daniel J. Morse, Cheyenne, WY, for U.S. Trustee.

Chapter 11

## ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT ON BASIS PLAN IS FACIALLY UN-CONFIRMABLE

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on the Objection of West Loan Acquisitions Holdings, L.P. ("Creditor") to the Debtors' most recent disclosure statement. Although the Objection raises several issues, the parties have asked the Court to first determine an issue that may render the Debtors' proposed plan facially unconfirmable. It centers on whether the plan may separately classify and deem impaired the secured tax claim of Mesa County. Section 1129(a)(10) of the Bankruptcy Code provides that, if a plan contains an impaired class of claims, the plan proponent must secure an accepting vote of at least one impaired class.[1] The Creditor contends that the Debtors will not be able to satisfy this requirement without improperly classifying Mesa County's claim as an impaired class. Section 1129(a)(9)(D), added to the Bankruptcy Code in 2005, now specifies the treatment to be afforded in a chapter 11 plan to certain secured tax claims. The Creditor argues that, given this preferential statutory treatment, the claim cannot be separately classified and is not impaired. This raises an issue of first impression in this district.

## I. BACKGROUND

The Debtors are co-owners of a shopping center in Mesa County, Colorado,

Jeffrey S. Brinen, Jenny M.F. Fujii, Lisa N. Nobles, Benjamin H. Shloss, Denver, CO, for Debtors.

1. Future references to "§" or "section" shall refer to Title 11, United States Code, unless expressly stated otherwise.

which they claim is worth $4.5 million. The Creditor is owed approximately $5.1 million, secured by a first deed of trust on this property. The only other creditors are four unsecured claims totaling $22,100, and the secured claim of Mesa County for the 2013 real property taxes. The Debtors are proposing a 100% repayment plan, based on the substantive consolidation of their ownership interests and debts into a new entity, which will continue to operate the shopping center. They will fund their plan commitments with rental income, as the shopping center currently enjoys a 90% occupancy rate, as well as either a sale of the property or refinancing of the Creditor's debt within seven years.

The Plan establishes four classes of creditors: (1) priority wage claims (of which there are none); (2) the Mesa County secured tax claim; (3) the secured portion of the Creditor's claim; and (4) the non-priority unsecured claims, including the Creditor's deficiency claim. The plan proposes to retain Mesa County's lien on the property and to pay its claim in equal monthly installments, with statutory interest, over a one-year period. If the plan is confirmed, the Creditor will also retain its lien and its secured claim will be amortized over thirty years at 5% interest, to be paid in equal monthly installments, with a balloon payment due on the seventh anniversary of the plan's effective date. The unsecured class would be amortized over twenty-five years at 1% interest, with prorata monthly payments and a balloon payment due on the seventh anniversary of the plan's effective date.

## II. DISCUSSION

### A. The Ability of the Court to Determine Confirmation Issues In the Context of a Disclosure Statement Objection

 Although raised in an objection to a disclosure statement, the Creditor's arguments actually address the confirmability of the Debtors' plan. "Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage." *In re Larsen,* 2011 WL 1671538, at *2 n. 7 (Bankr.D.Idaho May 3, 2011). Courts have long held, however, that "if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *Id.* (citations omitted); *see also In re Am. Capital Equip., LLC,* 688 F.3d 145, 154 (3rd Cir.2012) (listing cases); *In re Deming Hospitality, LLC,* 2013 WL 1397458, at *1 (Bankr.D.N.M. Apr. 5, 2013). The rationale given for this short-circuited process is that the estate and parties should not bear the expense and effort required by the full confirmation process if there is a fatal flaw that makes the plan unconfirmable as a matter of law. These decisions draw on a bankruptcy court's § 105(a) power to control its own docket, and provide that it is within the bankruptcy court's discretion to withhold approval of the disclosure statement on this basis. *Am. Capital Equip., LLC,* 688 F.3d at 154.

 A plan is "patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects 'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" *Id.* at 154–55 (citing *In re Monroe Well Serv.,* 80 B.R. 324, 333 (Bankr.E.D.Pa.1987)). The defect complained of here is the plan's separate classification of Mesa County's secured claim and its characterization of this

class as an impaired class. This raises a legal question, as to which no party has raised a genuine issue of material fact. Technically, voting results could overcome this defect. For example, if class four voted in favor of the Debtors' plan, then this alleged defect would not make the plan unconfirmable. Both parties acknowledge, however, that the Creditor will control the vote of both classes two and four. The Debtors accept the Creditor's statement that it will vote both its secured and unsecured claims to reject this plan. Thus, while theoretically voting results *could* overcome the defect, it is undisputed that the Debtors will not be able to secure a necessary impaired, accepting class without counting the vote of Mesa County as a separate impaired class. For these reasons, the Court deems this confirmation issue appropriate for adjudication in advance of a confirmation hearing.

## B. The Relevant Statutory Framework

To fully understand the somewhat complicated confirmation issues presented in this case, one must understand how various sections of the Code treat unsecured and secured tax claims, and how those sections interact in a chapter 11 case. First, the Code gives certain *unsecured* tax claims priority treatment. Specifically, § 507(a)(8)(B) gives priority treatment to an unsecured tax claim for "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(B). In a chapter 11 case, additional provisions define how a plan of reorganization may treat the § 507(a)(8) claim. Section 1123(a)(1) provides that § 507(a)(8) claims may not be separately classified. Instead, § 1129(a)(9)(C) specifies how these tax claims must be paid under a plan. It provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

. . . .

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)) . . . .

11 U.S.C. § 1129(a)(9)(C). Thus, an unsecured property tax claim entitled to priority treatment under § 507(a)(8)(B) must be given this statutorily prescribed treatment in any chapter 11 plan, but may not be separately classified or given a vote as a member of an impaired creditor class.

When dealing with a *secured* tax claim, a different subsection of § 1129 applies, but specifies similar treatment. Pursuant to § 1129(a)(9)(D), if a secured property tax claim would fall within the definition of a § 507(a)(8)(B) priority claim but for the fact that it is secured, then the plan must provide "cash payments, in the same manner and over the same period, as pre-

scribed in subparagraph (C)." 11 U.S.C. § 1129(a)(9)(D). In other words, the subset of secured tax claims that would otherwise be priority tax claims, but for their liens, must also be paid in regular installments, over a period not exceeding five years from the date of the order for relief, and in a manner not less favorable than the most favored treatment given to a nonpriority unsecured claim by the plan, excluding an administrative convenience class.

The parties raise several issues as to how these provisions apply to Mesa County's secured tax claim. First, Debtor argues that § 1129(a)(9)(D) does not apply because Mesa County's claim is not a tax claim that would otherwise fall within the definition of a § 507(a)(8)(B) priority claim but for Mesa County's lien. Second, assuming Mesa County's claim does fit under the § 1129(a)(9)(D) definition, the Creditor argues that the claim should not be separately classified, since § 1123(a)(1) prohibits classification of unsecured priority tax claims. Alternatively, if it is separately classified, the Creditor contends that it is not impaired due to the favorable statutory treatment they receive under § 1129(a)(9)(C), as required by § 1129(a)(9)(D). As a result, the Creditor urges this Court to find that the Debtors' plan is not confirmable because the Debtors will be unable to secure an accepting vote from an impaired class since the Mesa County tax claim cannot satisfy this requirement and there are no other impaired classes that will support this plan.

**C. Applicability of § 507(a)(8)(B): Construing "Last Payable Without Penalty After One Year" Before the Petition Date**

■ According to the Debtors, the Court does not need to reach the more difficult questions of whether Mesa County's secured tax claim can be separately classified and whether it is impaired because there is a threshold issue that will obviate the need to answer those questions. If Mesa County's claim does not satisfy all of the criteria of § 507(a)(8), but for its secured status, then § 1129(a)(9)(D) is not applicable. The Debtors contend that the Mesa County tax claim does not meet § 507(a)(8)(B)'s requirement that the property tax be "last payable without penalty after one year before the date of the filing of the petition." This awkward phrase from § 507(a)(8)(B) refers to two things: (1) a one-year period preceding the bankruptcy filing; and (2) the last payment date for the tax at issue. The Debtors advocate for an interpretation which requires the last payment date to occur during the one-year period. In other words, under the Debtors' interpretation, the last payment date must occur *before the petition date*. If the Court were to adopt this interpretation, then the Mesa County tax claim would fall outside the reach of this statute because the last date on which it could be paid without penalty was either April 30, 2014 or, if paid in two installments, February 28, 2014 and June 15, 2014. *See* Colo.Rev.Stat. § 39–10–104.5 (2103). All three dates fall well after the petition date.

Unfortunately, the Debtors provide no authority for their interpretation of this phrase. They rely on decisions in which the last payment date did, in fact, occur before the petition date. *See, e.g., In re Howe*, 455 B.R. 148 (Bankr.W.D.Wis.2011). Under such circumstances, the court did not need to determine whether a postpetition date would suffice for § 507(a)(8)(B)'s purposes. Contrary to Debtors' interpretation, the weight of authority holds that this phrase means that the "last payable without penalty" date merely has to occur sometime after the start of the one-year lookback period, regardless of whether

that date falls before or after the petition. In other words, if the "last payable" date is more than 365 days before the petition date, then the property tax is not eligible for priority treatment. But if the "last payable" date is less than 365 days before the petition date, even if that date is after the petition date, then it is entitled to priority, as long as it is also a tax incurred prepetition. *See, e.g., In re Wang Zi Cashmere Prods., Inc.,* 202 B.R. 228, 231 (Bankr.D.Md.1996); *In re New England Carpet Co.,* 26 B.R. 934, 940–41 (Bankr. D.Vt.1983). Bankruptcy commentators agree. "There is no requirement ... that the last date on which the tax could be paid without penalty have occurred prior to the commencement of the case. So long as the tax was [incurred] prior to the petition date, it will be eligible for priority." 4 *Collier on Bankruptcy* ¶ 507.11[3][c] (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2013).

In *Marion County Treasurer v. Blue Lustre Products, Inc. (In re Blue Lustre Products, Inc.),* 214 B.R. 188, 191–92 (S.D.Ind.1997), the district court construed this language similarly. In doing so, it considered the ramifications of the opposite conclusion. If a prepetition tax was last payable without penalty on a date after the petition date and it was not classified as a prepetition priority claim under § 507(a)(8), then it would have to be considered a postpetition claim, which would give it an even higher priority as a cost of administration. Yet to qualify as an administrative cost, which is governed by § 503(b)(1)(B)(i), it would have to have been incurred by the estate, rather than the debtor. Since it was not incurred by the estate, the Debtors' construction would place the claim in a strange "no man's land." It would be neither a priority claim nor a postpetition administrative claim. Moreover, the *Blue Lustre* court reasoned this would be contrary to another Bank-

ruptcy Code provision. Under § 502(i), "[a] claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined ... the same *as if such claim had arisen before the date of the filing of the petition.*" 11 U.S.C. § 502(i) (emphasis added). The court held that the effect of § 502(i) is to treat the taxes incurred prepetition, but payable postpetition "as if they had arisen before the filing of the petition and therefore enable the taxes to satisfy the 'last payable' requirement of section 507(a)(8)." *Blue Lustre,* 214 B.R. at 191.

This same awkward phrasing is used in other priority tax subsections of § 507(a)(8) and has consistently been interpreted in the same manner. Section 507(a)(8)(A)(i) refers to a tax "for which a return ... is last due ... after three years before the date of the filing of the petition. ..." In *Michigan v. Hight (In re Hight),* 670 F.3d 699 (6th Cir.2012), the Sixth Circuit interpreted this similar phraseology to include a state income tax that became due postpetition, but related to a tax year that ended prepetition. It held that the phrase "after three years before the date of the filing of the petition" included all dates after the date falling three years before the petition filing, including postpetition dates. *Id.* at 703. The Sixth Circuit reasoned that a contrary interpretation would render § 502(i) superfluous. If § 507(a)(8)(A)(i) "includes only claims that arise *before* the commencement of the bankruptcy case ... no claims would ever qualify" under § 502(i). *Id.* at 704 (emphasis original). "[A] court must 'mak[e] every effort not to interpret a [statutory] provision in a manner that renders other provisions of the same statute ... meaningless....'" *Id.* (quoting *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.,* 654 F.3d 654, 657 (6th

Cir.2011)); *see also Dixon v. Internal Revenue Serv. (In re Dixon )*, 218 B.R. 150, 153 (10th Cir. BAP 1998).

For these reasons, the Court finds that Mesa County's claim fits within the description of § 507(a)(8)(B), but for the secured status of its claim, and therefore § 1129(a)(9)(D) applies.

**D. Whether a § 1129(a)(9)(D) Claim May Be Separately Classified and Considered "Impaired" for Purposes of Satisfying § 1129(a)(10)'s Requirement of At Least One Impaired, Accepting Class**

Having determined that § 1129(a)(9)(D) applies to the Mesa County claim, the Court must next consider whether it may be separately classified and deemed impaired for voting purposes. The Creditor contends that the vote of a § 1129(a)(9)(D) claim should not be counted toward the one impaired, accepting class requirement of § 1129(a)(10) because it has already received preferential payment terms under § 1129(a)(a)(9)(C), relying on *In re Mangia Pizza Investments, LP*, 480 B.R. 669 (Bankr.W.D.Tex.2012). Although § 1129(a)(9)(D) was added to the Bankruptcy Code in 2005, there is a dearth of case law addressing this question[2] and there is no helpful legislative history.[3]

Turning first to the classification issue, the Court begins with § 1123(a)(1), which provides that a plan *shall* designate classes of claims. This statute lists only three exceptions to this general rule. The plan shall designate classes of claims, "other than claims of a kind specified in section 507(a)(2) [administrative expense claims], 507(a)(3) [involuntary gap claims], or 507(a)(8) [priority tax claims] of this title...." 11 U.S.C. § 1123(a)(1). Section 1123(a)(1) only excepts these three specific types of priority claims, not all priority claims. The Creditor argues that, because the Mesa County claim must receive the same treatment as a § 507(a)(8) claim, it too should not be separately classified.

The language in § 1129(a)(9) provides some additional support for the Creditor's position. It lists the type of treatment to be given to various priority claims and this subset of secured tax claims. When it refers to the three priority claims that are not entitled to be classified (§ 507(a)(2), (3), and (8) claims), it refers to a "claim" that falls within these categories and the treatment to be given to "the holder of such claim." 11 U.S.C. § 1129(a)(9)(A) and (C). In contrast, when this statute refers to the required treatment for priority claims under subsections 507(a)(1) and (5)-(7), it refers to a "class of claims" under these subsections of § 507. 11 U.S.C.

**2.** Some courts refer to the secured tax claimant's vote as satisfying the requirement of one impaired, accepting class, without any analysis of the issues. *See, e.g., In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 478 (Bankr. S.D.Ohio 2011). Others simply state that the secured tax claimant may not be an impaired consenting class. *See, e.g., In re GEL, LLC*, 495 B.R. 240, 248 n. 10 (Bankr.E.D.N.Y. 2012). Still others have raised the issue in dictum only. *See, e.g., In re Greenwood Point, LP*, 445 B.R. 885, 904–07 (Bankr.S.D.Ind. 2011) (court states that § 1129(a)(9)(D) claim may satisfy the one impaired, accepting class requirement, but this was dictum because the debtor had another accepting class and thus did not need the tax creditor's vote to satisfy § 1129(a)(10)); *In re EQK Bridgeview Plaza, Inc.*, 2011 WL 2458068, at *2 (Bankr.N.D. Tex. June 16, 2011) (question raised, but not decided, in context of motion for relief from stay); *see also In re Val–Mid Assocs., L.L.C.*, 2013 WL 139278, at *1–2 (Bankr.D.Ariz. Jan. 9, 2013).

**3.** *See In re Real Wilson Enters., Inc.*, 2013 WL 5352697, at *6 (Bankr.E.D.Cal. Sept. 23, 2013) (citing H.R.Rep. No. 109–31, pt. 1, at 102 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 166) (discussing legislative history).

§ 1129(a)(9)(B). Similar to § 1129(a)(9)(A) and (C), subsection (D) does not refer to a "class of claims," but employs the language "with respect to a secured claim" and the "holder of that claim." Perhaps these references in subsection (D) to a "claim" instead of a "class" are indicative of Congressional intent to exclude § 1129(a)(9)(D) claims from classification requirements, but in the rush to enact the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress failed to incorporate a corresponding change into § 1123(a)(1) as well. Consequently, as § 1123(a)(1) is presently written, the Court is constrained to interpret it to require classification of all claims other than the three express exceptions. *Accord In re Greenwood Point, LP,* 445 B.R. 885, 905 (Bankr.S.D.Ind.2011); *In re EQK Bridgeview Plaza, Inc.,* 2011 WL 2458068, at \*2 (Bankr.N.D. Tex. June 16, 2011).[4]

■ Separate classification, however, does not end the Court's inquiry. The most difficult question is determining whether this class is impaired. Section 1124 defines the Bankruptcy Code's concept of impairment. It provides that "[e]xcept as provided in section 1123(a)(4) of this title, a class of claims ... is impaired under a plan unless, with respect to each claim ... the plan" provides one of two specified forms of treatment. 11 U.S.C. § 1124 (prefatory clause). In essence, this wording establishes a presumption of impairment and then provides two exceptions.[5] The first exception is when the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder of such claim...." 11 U.S.C. § 1124(1). For this exception to apply, the plan must not alter the claimant's rights in any respect. The second exception builds on the first. It allows for only one alteration, the deceleration of a debt following a default. If the contract or applicable law would otherwise allow the claimant to accelerate payment in the event of a default, this subsection provides that the claim will nevertheless be deemed unimpaired if the plan cures the default and reinstates its pre-default maturity date, as long as the claimant is compensated for any resulting damages or losses and no other rights are altered. 11 U.S.C. § 1124(2). Thus, impairment equates to an alteration of the creditor's rights.

■ While even the slightest alteration may suffice to establish impairment, § 1124 is particular about the *source* of the impairment. The foundation of § 1124's

4. The Court acknowledges that it is problematic to treat secured tax claims as a separate class. Absent consent of each claimant, the plan may not provide less favorable payment terms than those specified in § 1129(a)(C) for § 507(a)(8) claims. Thus, a majority of a § 1129(a)(9)(D) class of claims could never bind the dissenting minority to treatment less favorable than that specified in the statute.

5. Actually, the introductory clause of § 1124 contains a third exception to the presumption of impairment in its prepositional phrase, "[e]xcept as provided in section 1123(a)(4) of this title." 11 U.S.C. § 1124. Section 1123(a)(4) states that a plan shall "provide the same treatment for each claim ... of a particular class, *unless the holder of a particular claim ... agrees to a less favorable treat-*

*ment of such particular claim...."* 11 U.S.C. § 1123(a)(4) (emphasis added). An agreement or consent to a particular treatment removes the claim from the presumption of impairment. "Agreement" or "consent" of a creditor is not to be confused with a class vote accepting the plan. Impairment is to be specified in advance of voting and, in fact, unimpaired classes are deemed to accept the plan and, therefore, solicitation of unimpaired classes is not required. 11 U.S.C. §§ 1123(a)(2) and 1126(f). But whenever a particular creditor has agreed or consented to less favorable treatment, which is usually evidenced through some form of stipulation or agreement, then the claim of this creditor is deemed unimpaired under § 1124.

concept of impairment is built on *plan* impairment. If the source of impairment is a law that limits claims in some respect, such as state usury law, that is not a form of impairment recognized by § 1124. The same is true if the source of the impairment is a Bankruptcy Code provision, rather than the plan itself.

For example, in *Solow v. PPI Enterprises (U.S.), Inc.* (*In re PPI Enterprises (U.S.), Inc.*), 324 F.3d 197 (3d Cir.2003), the landlord asserted his claim was impaired and, therefore, he was entitled to vote because his rent claim had been capped under § 502(b)(6). The Third Circuit concluded that this was statutory impairment, not plan impairment. "This language in § 1124(1) does not address a creditor's claim 'under nonbankruptcy law.'... In other words, a creditor's claim outside of bankruptcy is not the relevant barometer for impairment; we must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights." *Id.* at 204.

Similarly, in *In re American Solar King Corp.*, 90 B.R. 808, 819–22 (Bankr. W.D.Tex.1988), the bankruptcy court held that it was § 510, not the plan itself, that required subordination of the damage claims of a class of shareholders previously engaged in securities litigation.

> It is the Bankruptcy Code itself which creates the concept of claims, according broader legal rights in some ways and restricting legal rights in other ways.... If a plan leaves a claimholder subject to a given provision of the Code relating to the treatment of certain claims, the plan has certainly left unaltered the legal rights to which *such claim* entitles its holder.

*Id.* at 820 (emphasis original); *see also* Weiting Hsu, *Recognizing Impaired Accepting Class of Secured Tax Claims*, 31 Am. Bankr.Inst. J. 48, 48 (May 2012).

█ Against this backdrop, the Court must determine whether Mesa County's secured tax claim has been impaired and, if so, whether that impairment is *plan* impairment or *statutory* impairment. First, there is no doubt that Mesa County's rights have been altered. The County will retain its lien rights and will receive full payment, with statutory interest, but it will be paid over the course of one year following confirmation. As long as the monthly installment payments are timely made, it will not be allowed to exercise its rights under state law. The denial of its right to immediate payment or exercise of its state law rights is a material alteration of the County's legal rights.

█ In determining whether the plan is the source of its impairment, it is instructive to consider the historical treatment of secured tax claims. Prior to the enactment of § 1129(a)(9)(D) in 2005, if the plan was not a consensual plan accepted by all impaired classes, payment of a secured tax claim, like any other secured claim, was governed by § 1129(b)(2)(A). Under this section, the plan had to provide for the retention of the secured creditor's lien and its receipt of deferred cash payments representing the present value of its collateral, but the statute otherwise permitted a wide range of options for the treatment of its secured claim. Theoretically, payment could be stretched out over any number of years, with a balloon payment at the end of the term, even if the general unsecured class received more favorable treatment. If a plan proposed this type of treatment of a secured tax claim before 2005, then the plan itself clearly impaired the secured tax claimant's legal rights.

With the adoption of § 1129(a)(9)(D), the subset of secured tax claims that would otherwise qualify for priority treatment under § 507(a)(8) but for their liens must

now receive the treatment specified in § 1129(a)(9)(C) and § 511 (which requires the payment of interest at the rate specified by non-bankruptcy law). Section 1129(a)(9)(C) requires "regular installment payments in cash" totaling the present value of the full amount of the claim, over a period "ending not later than 5 years after the date of the order for relief," and "in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan" (other than an administrative convenience class). 11 U.S.C. § 1129(a)(9)(C). This section still leaves a few treatment options open. "Regular installment payments" could refer to monthly, quarterly, or annual payments. It could refer to either payments of principal and interest, or interest-only payments, with a balloon principal payment. "Not later than 5 years" could refer to a time period ranging anywhere from payment in full on the effective date to five years from the order for relief. What is not mentioned explicitly is a requirement that this subset of secured tax claims retain their liens.

If a plan, such as Debtors' plan, provides this subset of secured tax claims with the treatment required by § 1129(a)(9)(D), does this treatment now constitute statutory impairment as opposed to plan impairment? This is not as clear cut as the cases previously described, involving a § 502(b)(6) statutory cap on landlord damage claims and the statutory subordination under § 510 of shareholders' damage claims. In both of those cases, a Bankruptcy Code provision limited the claims, regardless of any plan filed. Here, we have a Code provision—§ 1129(a)(9)(D)— that limits treatment of secured tax claims only if a chapter 11 plan is filed. In other words, the applicable Code provision is one that defines what a chapter 11 plan must provide. Because the statute requires a particular *plan* treatment, one could argue it results in *plan* impairment.

On the other hand, if a debtor's plan provides the treatment specified by § 1129(a)(9)(D), one could argue that the plan is merely affording the claim the treatment mandated by the Code. "If a plan leaves a claimholder subject to a given provision of the Code relating to the treatment of certain claims, the plan has certainly left unaltered the legal rights to which *such claim* entitles its holder." *Amer. Solar King Corp.,* 90 B.R. at 820 (emphasis original). Admittedly, § 1129(a)(9)(D) only applies in the context of plan confirmation, but it is not the only section of the Bankruptcy Code that impairs secured tax claims. In chapter 7 cases, the secured tax claim may be subordinated to the payment of certain administrative expense and priority claims. 11 U.S.C. § 724(b). Thus, while it is a close call, the Court concludes that, when a plan merely provides the statutorily prescribed treatment afforded claims that fall within the purview of § 1129(a)(9)(D), and does not otherwise alter the secured tax claimant's non-bankruptcy rights, the plan itself is not the source of the claim's impairment. *Accord In re The Capital Centre, LLC,* 2013 WL 4510248, at *6–7 (Bankr. E.D.N.C. Aug. 22, 2013).

Moreover, this interpretation comports with the underlying spirit and purpose of sections 1123, 1124, 1126, and 1129. Chapter 11 is one of the only forms of bankruptcy that involves voting. It does not solicit votes from those who are already receiving everything to which they are legally entitled, nor from those who receive nothing under the plan. *See* 11 U.S.C. § 1126(f) and (g). Thus, voting is reserved for the claimants who have something at risk. "Creditors are given the right to vote based on an underlying assumption that they will cast their votes to maximize re-

covery on their claims." Christopher W. Frost, *Bankruptcy Voting and the Designation Power*, 87 Am. Bankr. L.J. 155, 155 (2013). When a plan receives sufficient creditor support through voting, it sends a signal to the court that the creditors who have the most to lose believe this plan represents the best possible recovery under the circumstances. Thus, voting rights give creditors additional leverage in negotiating with the plan proponent over the treatment of their claims. Claimants who are receiving a specified statutory treatment, on the other hand, do not need to negotiate their treatment. Congress has already determined the permissible range in treatment that they are to receive. This is undoubtedly why Congress provided in § 1123(a)(1) that § 507(a)(2), (3), and (8) claims were not to be classified because they already enjoy specific statutory treatment.

The Court is guided by these underlying principles in its interpretation of § 1129(a)(9)(D). While Congress failed to amend § 1123(a)(1) to add the § 1129(a)(9)(D) secured tax claims to its list of unclassified claims, it nevertheless adopted this new statute to specify the treatment that these claims must receive in any chapter 11 plan. As a result, the § 1129(a)(9)(D) secured tax claimants do not need to negotiate their treatment any longer and, therefore, voting serves no real purpose with these claims.

Thus, Mesa County's claim is not an impaired class entitled to vote on the plan. Debtor's plan cannot meet the requirements of § 1129 (a)(10), because it contains an impaired class of claims (the Creditor's claim), and the debtor is unable to secure an accepting vote of at least one impaired class.

## III. CONCLUSION

For the reasons set forth a above, it is h hereby

ORDERED that the Creditor's objection to the adequacy of the amended disclosure statement is SUSTAINED on the basis that the Debtors' plan is facially unconfirmable. Given this ruling, all other objections to the disclosure statement are OVERRULED as moot. The Court will set a status conference by separate order to ascertain how the Debtors wish to proceed in light of this Order.